IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 15-cv-01469-PAB-CBS

THE PREMIER GROUP, INC.

      Plaintiff,

v.

DARREN BOYD BOLINGBROKE,
HEIDI McNULTY,
MICHAEL SHANE COLLARD,
JOSEPH R. SIMMONS,
JAMES J. HUBBARD,
KIMSITH BOUN,
MARIA ALVARADO, and
DHS GROUP, LLC,

      Defendants.

_____

**ORDER**
_____

This matter is before the Court on the defendants' Motion to Dismiss for Lack of

Personal Jurisdiction and Improper Venue or, Alternatively, to Transfer Venue [Docket

No. 28].

## I. BACKGROUND[1]

Plaintiff is a staffing firm founded in 2008 that provides temporary, "temp-to-hire,"

and direct hire employees in the accounting, information technology, and construction

industries.  Docket No. 1 at 3-4, ¶¶ 15-16.  Plaintiff is headquartered in Denver,

Colorado with additional offices in Colorado Springs, Colorado, Austin, Texas, and

_____

[1]The following facts are taken from plaintiff's complaint [Docket No. 1] and are
presumed true for purposes of resolving this motion unless otherwise indicated.

Midvale, Utah (the "Utah office").  *Id.* at 4, ¶ 16.  Defendants Darren Bolingbroke, Heidi

McNulty, Michael Collard, Joseph Simmons, James Hubbard, Kimsith Boun, and Maria

Alvarado (collectively, the "individual defendants") are former employees of plaintiff who

worked in the Utah office.  *Id.* at 4-5, ¶¶ 18-24.  Each individual defendant submitted a

declaration, stating "I have worked exclusively in and for the Utah Branch of Premier."

*See, e.g*, Docket No. 28-1 at 2, ¶¶ 3-4.  In the course of their employment with plaintiff,

plaintiff alleges that Mr. Bolingbroke and Ms. McNulty signed an Employee Non-

Compete Agreement (the "non-compete agreement").  Docket No. 1 at 6, ¶ 31.  The

non-compete agreement prohibits the signatory from engaging in a competitive

business within a 50 mile radius during his or her employment with plaintiff and for one

year thereafter.  Docket No. 1-3 at 1-2.  Defendants deny that Mr. Bolingbroke and Ms.

McNulty signed such an agreement.    Each of the individual defendants acknowledged

receiving a copy of plaintiff's employee handbook, which prohibits, among other things,

employees from improperly using or disclosing plaintiff's trade secrets or confidential

business information.  Docket No. 1 at 6-7, ¶ 33.

Defendant DHS Group LLC ("DHS") is a limited liability company organized

under the laws of Utah.  *Id.* at 3, ¶ 12.  DHS was was allegedly formed in April 2015 by

defendants Bolingbroke, McNulty, and Collard to purchase plaintiff's Utah office.  *Id.* at

5-6, ¶¶ 27-30.

In June 2015, plaintiff discovered that multiple clients had recently ceased doing

business with plaintiff.  *Id.* at 7, ¶¶ 34-35.  Plaintiff's complaint does not specify whether

the identified former clients were clients of the Utah office or of plaintiff's other offices.

Plaintiff alleges that the individual defendants are diverting these clients to DHS.  *Id.* at 7-8, ¶ 36.  Plaintiff also discovered a business plan [Docket No. 1-6] on a company laptop that was issued to Ms. McNulty.  The business plan is for a company to be run and staffed by the individual defendants and whose business model consists of a staffing firm "based in Salt Lake City" and providing the placement of workers "in Utah." Docket No. 1-6 at 3.  The business plan includes financial information from "Plaintiff's internal financial records regarding Plaintiff's Utah Branch" and, according to plaintiff, sets forth a plan to either purchase the Utah office from plaintiff or "raid Plaintiff's customers in Utah."  Docket No. 1 at 8, ¶¶ 37-40.  Plaintiff alleges that the sources of certain portions of the business plan were (1) a document prepared by one of plaintiff's owners, (2) plaintiff's confidential internal policies and analysis documents, and (3) plaintiff's internal profit and loss spreadsheets.[2]  *Id.* at 9, ¶¶ 44-45.

Plaintiff accuses defendants, before their termination, of changing the assignment dates of every Utah worker in plaintiff's computer system.  *Id.* at 9-10, ¶ 47. Plaintiff also accuses the individual defendants of changing the voicemail messages on their company-issued cell phones to eliminate any reference to plaintiff.  *Id.* at 10, ¶ 49. And plaintiff accuses Mr. Collard of collecting a salary from plaintiff, but not actually working at the Utah office.  *Id.* at 10, ¶¶ 50-51.

Plaintiff recently analyzed the laptop computers and other information stored at the Utah office.  *Id.* at 11, ¶ 54.  Plaintiff discovered multiple instances where Mr.

---

[2]Although plaintiff's complaint does not specify whether the profit and loss projections contained in the business plan concerned plaintiff's entire business or just the Utah office, given the stated goal of defendants' business plan, it appears likely that the business plan contains profit and loss projections as to the Utah office.

Bolingbroke, Ms. McNulty, and Mr. Collard forwarded to their personal email accounts customer invoicing data, customer lists, Utah office budget information, Utah office payroll information, and emails from plaintiff's customers. *Id.* at 11-14, ¶ 54.  Plaintiff discovered minutes from weekly meetings between the individual defendants at one of their homes where the Utah office was discussed, which plaintiff contends evidences a conspiracy to take customer data, defraud plaintiff, and build a competing enterprise. *Id.* at 14-15, ¶¶ 55-56.  Plaintiff also alleges that Ms. McNulty contacted one of plaintiff's Utah workers with a message that plaintiff was going out of business and that Ms. McNulty was starting her own company. *Id.* at 15, ¶ 57.  Plaintiff claims that the foregoing facts establish that defendants have "formed a competing business, have diverted and continue to divert business from Plaintiff to their new competing enterprise, and are using confidential, proprietary and/or trade secret information belonging to Plaintiff to illegally raid Plaintiff's business in Utah and defraud Plaintiff." *Id.* at 15, ¶ 58.

On July 9, 2015, plaintiff terminated the individual defendants' employment and demanded that they return all property in their possession belonging to plaintiff. *Id.* at 10, ¶ 48.  Mr. Bolingbroke returned to the Utah office that day and provided plaintiff with a Letter of Intent to purchase the assets of plaintiff's "Utah operations."  Docket No. 1-7 at 1.

On July 11, 2015, plaintiff filed the present case.  Docket No. 1.  Plaintiff brings state-law claims against Mr. Bolingbroke and Ms. McNulty for breach of contract for violating the non-compete agreements and against all defendants for quantum meruit/unjust enrichment, conversion and civil theft, misappropriation of trade secrets, breach of employees' duty of loyalty/fiduciary duty to employer, intentional interference

with contracts and prospective business relations, civil conspiracy, and fraudulent concealment. *Id.* at 16-29. Plaintiff also brings a federal claim against all defendants for multiple violations of the Computer Fraud and Abuse Act ("CFAA"). 18 U.S.C. § 1030. Plaintiff seeks monetary and injunctive relief, in the latter case requesting that defendants be required to return property belonging to plaintiff, including computer equipment and plaintiff's proprietary business information. *See id.* at 17-18, ¶ 74.

Plaintiff filed a motion for a temporary restraining order ("TRO") and preliminary injunction along with its complaint. Docket No. 2. The parties reached an agreement with respect to plaintiff's request for a TRO. Docket No. 9 at 1; *see also* Docket No. 22-1. Defendants, however, terminated the agreement, Docket No. 22-6 at 1, which led plaintiff to file a renewed motion for a TRO and preliminary injunction. Docket No. 22. The Court has set a hearing on plaintiff's motions for preliminary injunction for Tuesday, July 28, 2015. Docket No. 33.

On July 21, 2015, defendants filed the present motion. Docket No. 28. Defendants argue that this case should be dismissed for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) and should be dismissed or, in the alternative, transferred, for improper venue pursuant to Rule 12(b)(3). *Id.* at 1. On July 23, 2015, per the Court's request, plaintiff filed a response brief. Docket No. 35. On July 24, 2015, defendants filed a reply. Docket No. 36.

## II.  STANDARD OF REVIEW

The purpose of a motion to dismiss under Rule 12(b)(2) is to determine whether the Court has personal jurisdiction. The plaintiff bears the burden of establishing

personal jurisdiction over defendants. *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir. 1988). The plaintiff can satisfy its burden by making a prima facie showing of personal jurisdiction. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). The Court will accept the well-pleaded allegations of the complaint as true to determine whether plaintiff has made a prima facie showing that personal jurisdiction exists. *AST Sports Sci., Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1057 (10th Cir. 2008). If the presence or absence of personal jurisdiction can be established by reference to the complaint, the Court need not look further. *Id*. The plaintiff, however, may also make this prima facie showing by putting forth evidence that, if proven to be true, would support jurisdiction over the defendant. *Dudnikov*, 514 F.3d at 1070. "[A]ny factual disputes in the parties' affidavits must be resolved in plaintiffs' favor." *Id*.

In reviewing a motion to dismiss for improper venue pursuant to Rule 12(b)(3), "[a]ll well-pleaded allegations in the complaint bearing on the venue question generally are taken as true, unless contradicted by the defendant's affidavits. A district court may examine facts outside the complaint to determine whether its venue is proper." *Hancock v. Am. Tel. & Tel. Co., Inc.*, 701 F.3d 1248, 1260-61 (10th Cir. 2012) (quoting 5B Charles Alan Wright et al., *Federal Practice & Procedure* § 1352 (3d ed. 2015)). "[T]he court must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff." *Id.* at 1261 (quotation and citation omitted). Where the parties have presented contrary evidence, it may be appropriate for the court to hold an evidentiary hearing. *Id.*

## III.  ANALYSIS

Although personal jurisdiction "is typically decided in advance of venue . . .

neither personal jurisdiction nor venue is fundamentally preliminary.  . . . Accordingly,

when there is a sound prudential justification for doing so . . . a court may reverse the

normal order of considering personal jurisdiction and venue." *Leroy v. Great W. United*

*Corp.,* 443 U.S. 173, 180 (1979).  A prudential justification for addressing venue first

exists in this matter.  There are numerous issues raised by defendants' personal

jurisdiction arguments, whereas there is but a single question the Court must resolve in

determining whether venue is proper in this District.  *See id.* at 181 (avoiding the "more

difficult" question of personal jurisdiction where it was "so clear that venue was

improper").

### A.  Venue

Pursuant to § 1391(b), venue in a civil action lies in

> (1) a judicial district in which any defendant resides, . . . ; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

Plaintiff alleges that venue is proper pursuant to § 1391(b)(2) because "a substantial

part of the events or omissions giving rise to Plaintiff's claims occurred in this District."

Docket No. 1 at 3, ¶ 14.[3]  Under § 1391(b)(2), venue is not limited to the district where

---

[3]Plaintiff's complaint does not assert that venue is proper because "a substantial portion of property that is the subject of the action is situated" in this District.  § 1391(b)(2).  Thus, the Court need not consider whether venue would be proper on that basis.

the majority of the events or omissions occurred.  Rather, § 1391(b)(2) "contemplates that venue can be appropriate in more than one district . . . [and] permits venue in multiple judicial districts as long as a substantial part of the underlying events took place in those districts."  *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1166 (10th Cir. 2010) (applying prior version of § 1391) (quoting *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 356 (2d Cir. 2005)).  The Tenth Circuit has declined to hold that the venue inquiry is necessarily limited to the defendant's actions.  *See id.* at 1166 n.11.  Once venue is challenged, it is the plaintiff's burden to show that venue is proper in the forum district.  *See Gwynn v. TransCor Am., Inc.*, 26 F. Supp. 2d 1256, 1261 (D. Colo. 1998); 5B Charles Alan Wright et al., *Federal Practice & Procedure* § 1352 (3d ed. 2015) (noting that imposing burden on plaintiff "seems correct inasmuch as it is the plaintiff's obligation to institute his action in a permissible forum, both in terms of jurisdiction and venue").  The propriety of venue under § 1391(b)(2) "is determined separately for each claim."  *Beams v. Norton*, 256 F. Supp. 2d 1203, 1212 (D. Kan. 2003); *see also Pioneer Surgical Tech., Inc. v. Vikingcraft Spine, Inc.*, 2010 WL 2925970, at *3 (W.D. Mich. July 21, 2010) ("[I]n a case such as this, where multiple claims are asserted, a court must consider the specific events giving rise to each claim in addressing whether a substantial connection exists."); 14D Charles Alan Wright et al., *Federal Practice & Procedure* § 3808 (4th ed. 2015) ("if plaintiff asserts multiple claims against the defendant, venue must be proper for each claim").

Defendants argue, and plaintiff does not dispute, that "not a single event in Plaintiff's Verified Complaint [is] alleged to have occurred in Colorado" and that

defendants "and the companies allegedly diverted by Defendants . . . are all located in Utah."  Docket No. 28 at 8-9.  In response, plaintiff argues that it entered into contractual relationships with Mr. Bolingbroke and Ms. McNulty, who plaintiff contends were the leaders of defendants' plan to compete with plaintiff's Utah office.  Docket No. 35 at 11.  Plaintiff also argues defendants logged on to plaintiff's computers in Colorado and copied confidential data and that "[m]uch" of the trade secret information at issue "was created in Colorado and stored in Colorado" or "is situated in Colorado."  Id. at 11-12.  Although plaintiff's argument regarding venue does not cite to any allegations in the complaint, plaintiff provides declarations from three individuals that lend support to its argument.  Plaintiff's co-owner Rich Johnson states that plaintiff has a centralized management structure such that defendants knew their actions would inflict injury on plaintiff's Denver headquarters.  Docket No. 35-1 at 2, ¶ 10.  He also states that plaintiff's computer system is housed and maintained in Denver and that defendants' downloaded material from those systems without authorization.  Id. at 2, ¶¶ 11-12.  Plaintiff's IT Administrator Adam Gilbertson states that the company-issued computer equipment defendants used was purchased and configured in Denver and that the information defendants sent to their personal email accounts was stored on a computer system maintained in Denver, "which contained the company's confidential, proprietary and/or trade secret information."  Docket No. 35-9 at 1-2, ¶¶ 2, 8-10.  Plaintiff's co-owner Debra Johnson states that "profit and loss reports, financial reports and state and federal taxes are prepared and filed out of Colorado."  Docket No. 35-2 at 2, ¶ 8.

A court conducts a two-part analysis when reviewing challenges to venue under § 1391(b)(2).  First, it "examine[s] the nature of the plaintiff's claims and the acts or

9

Case 1:15-cv-01469-PAB-CBS   Document 41   Filed 07/27/15   USDC Colorado   Page 10 of 31

omissions underlying those claims." *Emp'rs Mut. Cas. Co.,* 618 F.3d at 1166.  Plaintiff's

complaint alleges that plaintiff's former employees of the Utah office formed a business

to compete with plaintiff's Utah office.  Defendants intended to either buy the Utah

office and its customer lists from plaintiff or, if plaintiff would not sell, "raid Plaintiff's

customers in Utah."  Docket No. 1 at 8, ¶¶ 37-40.  In furtherance of their plan,

defendants – while still employed by plaintiff – held meetings at their homes, attempted

to divert plaintiff's Utah clients away from plaintiff through various means, and

forwarded plaintiff's confidential, proprietary, and trade secret information to their

personal email accounts.  Upon termination, defendants retained computer equipment

belonging to plaintiff, despite plaintiff's requests that they return such equipment.

The second step requires the Court to "determine whether substantial 'events

material to those claims occurred' in the forum district." *Emp'rs Mut. Cas. Co.,* 618 F.3d

at 1166 (quoting *Gulf Ins.*, 417 F.3d at 357).  This requirement is satisfied upon a

showing of "acts and omissions that have a close nexus to the alleged claims."  *Id.*

(quotation and citation omitted).  Courts look beyond the acts that triggered a claim to

the entire sequence of events underlying such a claim.  *Id.*

### 1. CFAA Claims

Plaintiff brings claims for violation of 18 U.S.C § 1030(a)(4) and §1030(a)(5) of

the Computer Fraud and Abuse Act.  Docket No. 1 at 16, 18.  Although the elements of

each claim are somewhat different,[4] both claims allege the same course of conduct.

---

[4]"The elements of a civil claim premised on [18 U.S.C.] § 1030(a)(4) are: (i) the
defendant accessed a protected computer, (ii) the access was either unauthorized or
beyond the scope of access for which the person was authorized, (iii) the defendant
accessed the computer with an intent to defraud and in furtherance of a scheme to

Plaintiff alleges that defendants were granted access to its computer system for developing and growing plaintiff's business. *Id.* at 16, ¶ 66. Plaintiff alleges that defendants exceeded the scope of their authorized access to its computer system by obtaining proprietary business information "for the purpose of undercutting Plaintiff's business, diverting customers away from Plaintiff's business and to their own new enterprise, and developing their own competitive enterprise that could ultimately destroy Plaintiff's business in Utah." *Id.* at 16, ¶ 67. Plaintiff alleges that, by accessing plaintiff's computer system without authorization, defendants breached plaintiff's security measures, requiring plaintiff to overhaul and replace "the security systems on Plaintiff's computer." *Id.* at 18-19, ¶ 78. There is no dispute that the servers and computer system hosting much of plaintiff's proprietary information are located in Colorado. There is similarly no dispute that defendants accessed that information while in Utah. The question is whether merely accessing servers located in the forum state constitutes a substantial event giving rise to a CFAA claim. In the narrow context of CFAA claims, multiple courts have answered that question in the affirmative. *See Dental Health Prods., Inc. v. Ringo*, 2009 WL 1076883, at \*3-\*4 (E.D. Wis. Apr. 20,

---

defraud, and (iv) the defendant 'obtained anything of value' as a result." *Int'l Acad. of Bus. & Fin. Mgmt., Ltd. v. Mentz*, 12-cv-00463-CMA-BNB, 2013 WL 212640, at \*10 (D. Colo. Jan. 18, 2013) (quoting *Triad Consultants, Inc. v. Wiggins*, 249 F. App'x 38, 40 (10th Cir. 2007)). 18 U.S.C. § 1030(a)(5) provides that it shall be unlawful for anyone to:

> (A) knowingly cause[] the transmission of a program, information, code, or command, and as a result of such conduct, intentionally cause[] damage without authorization, to a protected computer; (B) intentionally access[] a protected computer without authorization, and as a result of such conduct, recklessly cause[] damage; or (C) intentionally access[] a protected computer without authorization, and as a result of conduct, cause[] damage and loss.

2009) (holding that, where defendant accessed trade secrets stored on computer located in forum state, venue as to CFAA claim was proper in forum state (citing *Argent Funds Grp, LLC v. Schutt*, 2006 WL 2349464, at *2 (D. Conn. June 27, 2006) ("Substantial events material to the claim occurred in Connecticut; Schutt would not have been able to obtain the confidential information had the Connecticut file server never transferred the information to her via the internet.  The Connecticut file servers thus played a central role in the events that gave rise to the claim, and were one of the means by which the defendant allegedly stole the confidential information."))); *TracFone Wireless, Inc. v. Adams*, 2015 WL 1611310, at *6 (S.D. Fla. Apr. 9, 2015) (concluding that venue for CFAA claim was proper in the Middle District of Florida because, among other things, defendant coerced plaintiff's Miami-based employees into accessing and manipulating plaintiff's internal and proprietary systems, which were also located in Miami); *compare Spinello Cos. v. Silva*, 2014 WL 4896530, at *2 (D.N.J. Sep. 30, 2014) (holding that venue for CFAA claim accusing defendant of self-dealing was proper in New Jersey where defendant, among other things, often worked from New Jersey office, regularly traveled to plaintiff's New Jersey headquarters, and accepted a loan from plaintiff in New Jersey), *with Spinello Cos. v. Moynier*, 2014 WL 7205349, at *4 (D.N.J. Dec. 17, 2014) (holding that, where plaintiff's CFAA claim only accused defendant of deleting information from a laptop, "act was performed in California, by a resident of California, who worked in a California office" and venue in New Jersey was therefore improper).

Outside the context of the CFAA, courts have reached different conclusions as to venue when data is stored in one state and accessed from another.  *See, e.g.*, *Ikon Office Solutions, Inc. v. Rezente*, 2010 WL 395955, at *3 (E.D. Pa. Feb. 3, 2010) (rejecting argument that venue was proper in Pennsylvania in part because, even assuming that the data at issue was stored on computers located in Pennsylvania, "defendants allegedly gained access to and misappropriated plaintiff's confidential information and trade secrets through their computers in California").  Here, however, accessing a protected computer and causing damage to said computer are elements of plaintiff's CFAA claims, which renders the location of the computer particularly relevant to determining the location of substantial acts giving rise to such claims.  Because the computer system that defendants are alleged to have accessed and damaged is located in Colorado and because access and damage to a protected computer system are elements of plaintiff's CFAA claims, substantial acts giving rise to such claims occurred in Colorado.  Venue as to these claims is therefore proper in the District of Colorado.

### 2.  Breach of Contract

Plaintiff's breach of contract claim accuses Mr. Bolingbroke and Ms. McNulty of breaching their non-compete agreements by forming a business to compete with the Utah office.  Docket No. 1 at 20, ¶ 84.  In determining the proper venue for a breach of contract action, relevant factors include "'where the contract was negotiated or executed, where it was to be performed, and where the alleged breach occurred.'"  *Etienne v. Wolverine Tube, Inc.*, 12 F. Supp. 2d 1173, 1181 (D. Kan. 1998) (quoting *PI,*

*Inc. v. Quality Prods., Inc.*, 907 F. Supp. 752, 757-58 (S.D.N.Y. 1995)).  Neither party offers evidence of where the non-compete agreements were negotiated or executed. Even assuming that the agreements were negotiated and executed in Colorado and even considering the fact that the non-compete agreements are governed by Colorado law, Mr. Bolingbroke and Ms. McNulty were hired for and worked exclusively in the Utah office.  Although the non-compete agreements presumably prohibit competition within a 50 mile radius of any of plaintiff's offices, there is no indication that the parties entered into the non-compete agreements out of concern that Mr. Bolingbroke and Ms. McNulty would form a competitive business in Colorado.  Thus, the parties appear to have contemplated that the agreement would be primarily performed in Utah.  *See Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1372 (11th Cir. 2003) ("The non-compete agreement was also intended to be performed primarily in Savannah in order to protect the Savannah business and goodwill that Jenkins Brick acquired with the help of Bremer.  After all, Bremer's sales territory comprised only Savannah and the surrounding area; there was no goodwill garnered by Bremer in other territories that needed to be 'protected' by virtue of the non-compete provision.").  Moreover, there is no dispute that the alleged breach of the non-compete agreements occurred in Utah. Any injury flowing to plaintiff in Colorado from the breach appears to be purely economic.  *See Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995) ("if Congress had wanted to lay venue where the plaintiff was residing when he was injured, it could have said so expressly"); *HME Providers, Inc. v. Heinrich*, 2010 WL 653920, at *3 (M.D. Fla. Feb. 18, 2010) ("If economic harm to the plaintiff were enough to satisfy [§ 1391(b)(2)], a plaintiff could always bring suit in its home base, thus eviscerating the other parts of

[§ 1391(b)]."). Plaintiff does not argue otherwise. Thus, plaintiff fails to establish that this District is a proper venue for its breach of contract claim. *See TSIG Consulting Inc. v. ACP Consulting LLC*, 2014 WL 1386639, at *3 (S.D.N.Y. Apr. 9, 2014) (rejecting argument that venue for breach of contract claim could be grounded on fact that defendants accepted employment with company based in forum state, traveled to forum state to attend meetings, and formed a competing business while employed).

### 3.  Trade Secret Misappropriation

Plaintiff's trade secret claim accuses defendants of misappropriating plaintiff's trade secrets by forwarding confidential, proprietary, and trade secret information to their personal email accounts. Docket No. 1 at 23-24, ¶ 105. Courts take differing approaches to determining venue regarding trade secret misappropriation claims. Some courts hold that a misappropriation claim arises "'when the defendant makes commercial use of the trade secret,'" because "'where the gist of the tort is disclosure of a trade secret in violation of an obligation of confidentiality, the claim likely arises at the time of disclosure.'" *Hicklin Eng'g, L.C. v. Bartell*, 116 F. Supp. 2d 1107, 1111 (S.D. Iowa 2000) (quoting 3 Roger M. Milgrim, *Milgrim on Trade Secrets* § 13.04 (2000)); *see also TSIG Consulting*, 2014 WL 1386639, at *4 ("[T]he fact that defendants may have obtained TSIG's confidential information in this district, while certainly 'a link in the chain of events,' simply does not constitute an event giving rise to plaintiff's claims that defendants misused that information. The conduct relevant to TSIG's claims is the *misuse* of its information, not defendants' receipt of it." (citation omitted, emphasis in original)); *Open Solution Imaging Sys., Inc. v. Horn*, 2004 WL 1683158, at *6 (D. Conn.

15

July 27, 2004) (holding that, because defendant received proprietary information as a necessary part of his job, harm giving rise to plaintiff's claim was defendant's improper use and disclosure of such information).  Other courts adopt the bright line rule that, because trade secrets have a situs in their state of origin, a plaintiff can establish venue merely by showing that a trade secret originated in the forum state.  *See, e.g.*, *Paul Green Sch. of Rock Music Franchising, LLC v. Rock Nation, LLC*, 2009 WL 129740, at *3 (E.D. Pa. Jan. 13, 2009).

The Court finds the reasoning of *Hicklin* persuasive.  Given that, in most cases, trade secrets can be effortlessly stored and transmitted electronically to and from virtually any location, a bright line rule could have the effect of haling a defendant into a remote district having no real relationship to the conduct that precipitated the dispute. *See Cottman v. Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994). Moreover, although the creation of a trade secret is, in a causal sense, a necessary element of a trade secret misappropriation claim, it is the misappropriation of a trade secret which is the substantial event underlying such a claim.  *See Woodke*, 70 F.3d at 985.  Here, plaintiff asserts only that "[m]uch" of the misappropriated trade secrets and confidential information was created in and stored in Colorado.  Docket No. 35 at 11. Other than that, plaintiff does not identify additional facts suggesting that its trade secret misappropriation claim occurred in Colorado, and no such acts are apparent to the Court.  To the contrary, defendants' actions in forwarding plaintiff's information to their personal email accounts – presumably the prelude to disclosure – appears to have taken place in Utah.  Thus, plaintiff fails to establish that this District is a proper venue for its trade secret misappropriation claim.

16

### 4. Quantum Meruit/Unjust Enrichment

Plaintiff alleges that defendants have been unlawfully enriched at its expense through sales and profits realized from its proprietary information and that defendants have received and retained property of value that belongs to plaintiff. Docket No. 1 at 21, ¶¶ 89-90. Although plaintiff may have suffered economic loss in Colorado, plaintiff does not identify any other acts giving rise to this claim that occurred in Colorado. The acts leading to whatever benefit defendants received occurred in Utah. Any property of plaintiff that defendants have retained is located in Utah. Thus, plaintiff has failed to establish that this District is a proper venue for this claim.

### 5. Tort Claims

Courts evaluating the propriety of venue with respect to tort claims generally focus on the location where the tortious conduct occurred. *See Whiting v. Hogan*, 855 F. Supp. 2d 1266, 1286-87 (D.N.M. 2012) (holding that medical expenses incurred in New Mexico were insufficient basis for venue in New Mexico where traffic accident occurred in Arizona); *Basile v. Walt Disney* Co., 717 F. Supp. 2d 381, 386 (S.D.N.Y. 2010) (holding that where arrest, initial custody, and charges took place in Florida, venue in Southern District of New York was improper, despite fact that subsequent custody proceedings took place in New York); 14D Charles Alan Wright et al., *Federal Practice & Procedure* § 3806 (4th ed. 2015) ("courts tend to focus on where the allegedly tortious actions took place and where the harms were felt"). However, the mere fact that a plaintiff claims to have suffered injuries upon returning to its state of residence does not necessarily constitute a substantial part of the events or omissions

giving rise to a claim.  *See Whiting*, 855 F. Supp. 2d at 1286; *Hanyuan Dong v. Garcia*, 553 F. Supp. 2d 962, 965 (N.D. Ill. 2008) ("The fact that he alleges to have suffered from his injuries after returning to Illinois does not constitute a substantial part of the events or omissions giving rise to the claim." (quotations omitted)); *Fodor v. Hartman*, No. 05-cv-02539-PSF-BNB, 2006 WL 1488894, at *4 (D. Colo. May 30, 2006) ("the locus of damage to a plaintiff has not been found to be the basis for setting venue"). *But see Gordon v. DTE Energy*, 680 F. Supp. 2d 1282, 1287 (W.D. Wash. 2010) (holding that, because plaintiff suffered harm from violation of Fair Credit Reporting Act in Washington, "substantial part of the events giving rise to the claim occurred in Washington" (citing *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1075-76 (9th Cir. 2001) (concluding that substantial part of events giving rise to a claim occurred in Nevada because "at least one of the 'harms' suffered by Plaintiffs is akin to the tort of invasion of privacy and was felt in Nevada"))).

### a.  Conversion and Civil Theft

There appear to be two aspects to plaintiff's conversion and civil theft claim. First, plaintiff alleges that defendants accessed plaintiff's computer system and took proprietary information for the propose of diverting its customers, workers, and candidates to their new enterprise.  Docket No. 1 at 22, ¶ 94.  In Colorado, "[c]onversion is defined as any distinct, unauthorized act of dominion or ownership exercised by one person over personal property belonging to another."  *Glenn Arms Assocs. v. Century Mortg. & Inc. Corp.*, 680 P.2d 1315, 1317 (Colo. App. 1984); *see also Huffman v. Westmoreland Coal Co.*, 205 P.3d 501, 509 (Colo. App. 2009) ("To

succeed on his civil theft claim, plaintiff had to establish that (1) defendant knowingly

obtained control over his property without authorization and (2) defendant did so with

the specific intent to permanently deprive him of the benefit of the property.").[5]

"Although the act of conversion takes place at the time the converter takes dominion

over the property, predicates to a successful claim for conversion are the owner's

demand for the return of property, and the controlling party's refusal to return it."  *Glenn*

*Arms*, 680 P.2d at 1317.  Assuming that plaintiff can state a claim for conversion or civil

theft of its proprietary information, the lone fact tying such property to Colorado is that it

was stored in plaintiff's servers located in Colorado.  Defendants did not, however,

exercise dominion over the subject property, at the earliest, until the information was

transmitted from Colorado to their location in Utah.  *See Rezente*, 2010 WL 395955, at

*3.  The dispute over the return of such property arose in Utah.  *See Pioneer Surgical*,

210 WL 2925970, at *3 (holding that venue for conversion claim alleging refusal to

return property was in state where refusal to return property took place).  Thus, in the

absence of argument to the contrary, the Court finds that substantial acts giving rise to

this claim did not occur in Colorado.  Venue in this District is therefore improper.

---

[5]A conversion claim under Utah law is defined as:
A conversion is an act of wilful interference with a chattel, done without lawful justification by which the person entitled thereto is deprived of its use and possession. The measure of damages of conversion is the full value of the property. It requires such a serious interference with the owner's right that the person interfering therewith may reasonably be required to buy the goods. Although conversion results only from intentional conduct it does not however require a conscious wrongdoing, but only an intent to exercise dominion or control over the goods inconsistent with the owner's right.
*Phillips v. Utah State Credit Union*, 811 P.2d 174, 179 (Utah 1991) (quotation omitted). Thus, regardless of whether Colorado or Utah law applies, the law that will be applied is essentially the same.

### b.  Breach of Employees' Duty of Loyalty/
### Fiduciary Duty to Employer

Plaintiff alleges that, while defendants were employed by plaintiff, they converted

plaintiff's property, solicited plaintiff's customers, used plaintiff's confidential

information, and illegally transferred plaintiff's assets.  Docket No. 1 at 25, ¶¶ 109-114.

Plaintiff does not identify any acts giving rise to this claim that took place in Colorado.

No such acts are apparent.  The mere fact that plaintiff's proprietary information was

stored on servers in Colorado is merely incidental to this claim, as is the fact that

defendants may have received paychecks from plaintiff's Colorado headquarters.

Plaintiff alleges that former employees of the Utah office breached their duty of loyalty

and fiduciary duty through acts that occurred in Utah.  This District is not a proper

venue for this claim.

### c.  Intentional Interference with Contracts and Prospective
### Business Relations

Plaintiff alleges that defendants interfered with the contracts of its customers and

dissuaded those customers from continuing to do business with plaintiff.  Docket No. 1

at 26, ¶¶ 118-119.  There is no suggestion that the customer relationships to which this

claim refers concerned customers located in Colorado.  Thus, there is no basis for

concluding that a substantial part of the acts giving rise to this claim occurred in

Colorado.

### d.  Civil Conspiracy

Plaintiff alleges that defendants continue to engage in a conspiracy to steal

plaintiff's proprietary information in order to "raid Plaintiff's business and divert business

20

to their competing enterprise." Docket No. 1 at 27, ¶ 123. Other than the fact that some of plaintiff's proprietary information was stored on servers located in Colorado, for the reasons discussed above, the acts giving rise to this claim occurred in Utah. The object of the conspiracy was to subvert business activity taking place in the Utah office, thereby damaging plaintiff's ability to do business through the Utah office. *Cf. Sadighi v. Daghighfekr*, 36 F. Supp. 2d 267, 275-76 (D.S.C. 1999) (finding venue for civil conspiracy claim proper in South Carolina because, although the alleged conspiracy physically took place in Florida, the object of the conspiracy was to remove plaintiff from board of directors position in South Carolina). Any resulting injury plaintiff suffered in Colorado appears to be of the economic variety. Plaintiff does not argue otherwise. Thus, venue in the District of Colorado is not proper as to this claim.

### e.  Fraudulent Concealment

Plaintiff alleges that, while defendants were still employed by plaintiff, they concealed from plaintiff their plan to form a competing business in Utah. Docket No. 1 at 27-28, ¶¶ 128-133. Any acts giving rise to this claim that may have occurred in Colorado – and plaintiff identifies none – are incidental to this claim. Any misrepresentations defendants made for the purposes of concealing their alleged scheme originated in Utah. The mere fact that such misrepresentation may have been received or relied upon by plaintiff in Colorado is insufficient to ground venue. *See Gemini Investors III, L.P. v. RSG, Inc.*, 2009 WL 776740, at *2 (D. Minn. Mar. 20, 2009) ("When misrepresentations are the underlying events of a litigation, courts generally look to the place where the misrepresentations were made, not the place where they

were received or relied upon, to determine where the underlying events occurred."

(collecting cases)).

### B.  Pendent Venue and Transfer

Neither party appears to have contemplated that venue would lie in this District

for less than all of plaintiff's claims.  Thus, the parties offer little guidance as to how the

Court should proceed.  Although it is not clear whether defendants would advocate for

the dismissal of the non-CFAA claims, defendants request that, rather than dismissing

the entire action, this case should be transferred to the District of Utah pursuant to 28

U.S.C. § 1404(a).  Docket No. 28 at 9.  Plaintiff objects to transfer of this case.  Docket

No. 35 at 12.  There appear to be three options given that venue exists as to some

claims and not others: (1) exercise pendent venue over the non-CFAA claims, thereby

allowing plaintiff to litigate the entire action in this District, (2) transfer the entire action

to the District of Utah pursuant to § 1404(a), or (3) dismiss the non-CFAA claims, with

the result being that the CFAA claims would be litigated in this Court and the non-CFAA

claims would be litigated in Utah.[6]

"Under the doctrine of pendent venue, when two or more federal claims are

brought and venue is properly laid as to one claim, that venue will support the

adjudication of the other related claim."  *Jackson v. MCI Telecomms. Corp.*, 1993 WL

408332, at *2 (D. Kan. Sept. 29, 1993).  The doctrine of pendent venue is analogous to

the doctrine of supplemental jurisdiction; both "facilitate the efficient and convenient

---

[6]Pursuant to § 1404(a), a court may only transfer "an entire action, not individual claims."  *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1518 (10th Cir. 1991).

joinder of claims that are so closely related that they constitute one case."  14D Charles

Alan Wright et al., *Federal Practice & Procedure* § 3803 (4th ed. 2015); *see also Basile*,

717 F. Supp. 2d at 387.  The doctrine is most often applied where, as here, venue is

lacking for a state law claim that "arises from the same nucleus of operative facts as a

'properly venued' federal claim."  *Basile*, 717 F. Supp. 2d at 387 (citation omitted).  In

determining whether to retain claims where venue is lacking, "'a court must consider

factors such as judicial economy, convenience to the parties and the court system,

avoidance of piecemeal litigation and fairness to the litigants.'"  *Id.* (quoting *Hsin Ten*

*Enter. USA, Inc. v. Clark Enters.*, 138 F. Supp. 2d 449, 462 (S.D.N.Y. 2000)); *see also*

*Jackson*, 1993 WL 408332, at *2 ("The decision whether to exercise pendent venue is a

matter of judicial discretion based upon the relatedness of the claims, judicial economy,

convenience, and fairness.").[7]

   The considerations relevant to the discretionary exercise of pendent venue are

similar to the considerations relevant to discretionary transfer under § 1404(a).  "For the

convenience of parties and witnesses" and "in the interest of justice," a district court

may transfer a civil action to another venue where it might have been brought.  28

U.S.C. § 1404(a).  In ruling on a motion to transfer venue under § 1404(a), courts in the

Tenth Circuit consider a mix of public and private factors, including (1) the plaintiff's

choice of forum; (2) the accessibility of witnesses and other sources of proof; (3) the

---

[7]The Tenth Circuit does not appear to have acknowledged the doctrine of pendent venue and courts in the Tenth Circuit do not regularly apply it.  Such circumstances have given at least one court pause as to whether to invoke it.  *See PFC Payment Solutions, LLC v. Element Payment Servs., Inc.*, No. 12-cv-01472-CMA-MJW, 2012 WL 3264305, at *4 (D. Colo. Aug. 10, 2012).

cost of obtaining such proof; (4) docket congestion; (5) problems related to the conflict of laws; (6) the desirability of having local courts determine questions of local law; (7) advantages and obstacles to a fair trial; and (8) judicial efficiency and economy. *Emp'rs Mut. Cas. Co.*, 618 F.3d at 1167 (internal citations omitted). A party seeking transfer has the burden of establishing that the existing forum is inconvenient, *id.*, but "[m]erely shifting the inconvenience from one side to the other, however, obviously is not a permissible justification for a change of venue." *Scheidt v. Klein*, 956 F.2d 963, 966 (10th Cir. 1992).

Because the applicability of pendent venue and the appropriateness of transfer pursuant to § 1404(a) turn on the same discretionary considerations, the Court will consider each relevant consideration in deciding whether to retain this case or transfer it to the District of Utah, a district where the parties agree this action could have been brought. *See* § 1404(a).

### 1. *Plaintiff's Choice of Forum*

"'[U]nless the balance is strongly in favor of the movant[,] plaintiff's choice of forum should rarely be disturbed.'" *Emp'rs Mut. Cas Co.*, 618 F.3d at 1168 (quoting *Scheidt*, 956 F.2d at 965). However, less deference is afforded a plaintiff's choice of forum if the facts giving rise to the lawsuit "have no material relation or significant connection to the plaintiff's chosen forum." *Id.* (quotation omitted); *see also* William W. Schwarzer, A. Wallace Tashima, & James M. Wagstaffe, *Practice Guide: Federal Civil Procedure Before Trial* §§ 4:760-762 (Nat'l Ed. 2013). Plaintiff argues that, because plaintiff resides in this District, its choice of forum should be entitled to greater

deference.  However, in addressing the propriety of venue in this district, defendant asserts, without dispute, that none of the events in plaintiff's complaint are alleged to have occurred in Colorado.  Docket No. 28 at 8-9.  Although plaintiff asserts that it has a centralized management structure based in Denver, Colorado that oversees certain aspects of the Utah office, that defendants employment files were maintained in Denver, and that staff at the Utah office communicated daily with plaintiff's Colorado headquarters, Docket No. 35-1 at 2, ¶¶ 6-10, plaintiff's claims do not directly arise out of any of these circumstances.  Rather, the conduct that gives rise to this case occurred entirely in Utah, where defendants are alleged to have formed a competing enterprise.  As discussed above, the locus of plaintiff's computer system does not, with the exception of plaintiff's CFAA claims, constitute a substantial act out of which this case arises.  The mere fact that plaintiff suffered economic injury is similarly insufficient to constitute a material relation or significant connection to Colorado.  Thus, the Court concludes that, although plaintiff's choice of forum weighs in plaintiff's favor, it does not weigh as heavily in plaintiff's favor as it otherwise might.

## 2.  Accessibility of Witnesses and Sources of Proof

"The convenience of witnesses is the most important factor in deciding a motion under § 1404(a)," but to demonstrate inconvenience the movant must "(1) identify the witnesses and their locations; (2) indicate the quality of materiality of the[ir] testimony; and (3) show[] that any such witnesses were unwilling to come to trial . . . [,] that deposition testimony would be unsatisfactory[,] or that the use of compulsory process would be necessary."  *Emp'rs Mut. Cas. Co.*, 618 F.3d at 1169 (quotation and citation omitted).  Defendants' counsel asserts that he has contacted representatives for

25

several of the companies mentioned in plaintiff's complaint.  Docket No. 28 at 11.

Defendants assert that, at present, nine such individuals who reside in Utah will testify

that defendants made no effort to divert business to any other company.  *Id.*

Defendants anticipate identifying more witnesses to testify on this topic.  Plaintiff argues

that defendants have failed to meet their burden of identifying witnesses' locations and

the importance of their testimony and have not established why the witnesses would be

unwilling to appear at trial in Colorado or that deposition testimony would be insufficient.

Docket No. 35 at 13.  Although defendants have not established that its witnesses

would be unwilling to travel to Colorado for trial or that their testimony could not be

presented via deposition, the fact that defendants have not established the requisite

elements with particularity is not surprising given that this case was filed only 16 days

ago.  Nonetheless, defendants have asserted that at least nine individuals residing in

Utah would testify as to whether defendants' improperly solicited business while

employed by plaintiff, which would rebut some of the claims raised in plaintiff's

complaint.  On the other hand, plaintiff's witnesses would presumably include both Rich

and Dara Johnson as well as Mr. Gilbertson, all of whom presumably reside in

Colorado.  The allegations in plaintiff's complaint increase the likelihood that, with the

exception of information regarding plaintiff's computer system, proof of defendants' acts

and omissions is likely to reside primarily in the State of Utah.  Thus, this factor weighs

in defendants' favor.

### 3.  Cost of Making Necessary Proof

Defendants assert that, because all of the witnesses and evidence reside in

Utah, the cost of litigating this case would be greater if litigated in Colorado.  Docket No.

28 at 11.  While the residency of a large number of witnesses in Utah may increase the costs of litigating this case for defendants, because there is no evidence in the record regarding the potential litigation costs, the Court declines to assign this factor much weight.

### 4.  Relative Advantages and Obstacles to a Fair Trial

Defendants' primary argument as to this factor is that many of the individual defendants are "low-level sales people who were terminated improperly and without notice and whose future work prospects are suspect by virtue of this case."  *Id.* at 11. Defendants attach affidavits from six of the individual defendants that assert, without explanation, that they do not have the resources to travel to Colorado to defend this case and will therefore be "den[ied their] right to a fair trial of the issues presented." *See, e.g.*, 28-3 at 3, ¶ 10.  Defendants further argue that they are currently unemployed.  Docket No. 36 at 6.  Plaintiff argues that mere fact that defendants may be inconvenienced if this case were litigated in Colorado is insufficient to merit transfer. Docket No. 35 at 12.

To the extent defendants' argument seeks to transfer the inconvenience of litigating this case to plaintiff, such an argument is an insufficient reason to transfer a case out of the forum district.  *See Cmty. Television of Utah, LLV v. Aereo, Inc.*, 997 F. Supp. 2d 1191, 1207 (D. Utah 2014); *Leasing, Inc. v. Reservation Ctr., Inc.*, No. 08-cv-02295-LTB, 2008 WL 5411478, at *3 (D. Colo. Dec. 29, 2008).  It may be true that litigating this case in the District of Colorado would impose a financial hardship on certain defendants and impair their ability to participate.  However, defendants have not

adequately supported their contention.  All defendants appear to be adequately

represented at the present time, despite their financial circumstances and residency in

Utah.  There is no reason to believe that their testimony could not be heard via video

teleconference or deposition.  Moreover, it is not clear whether those who are

unemployed are unemployed because plaintiff's lawsuit has called into question the

legitimacy of the competing enterprise, which is what this dispute is about.  Thus, on

this record, the Court is not convinced that cost concerns would deprive defendants of

the right to a fair trial.  This factor weighs in favor of plaintiff.

### 5.   Conflict of Laws and Desirability of Having Local Courts Determine Questions of Local Law

Generally, it is preferable to have an action adjudicated by a court "sitting in the

state that provides the governing substantive law." *Emp'rs Mut. Cas. Co.*, 618 F.3d at

1169.  Similarly, when "the merits of an action are unique to a particular locale, courts

favor adjudication by a court sitting in that locale." *Id.* at 1170.  Here, the parties appear

to disagree as to whether Colorado or Utah law would apply to plaintiff's state-law

claims, and neither party has presented a substantive argument in support of their

position.  Moreover, this consideration is less significant because federal judges are

used to applying state law. *Id.* at 1169.  Although the conduct giving rise to this case

occurred primarily in Utah and defendants are Utah residents, plaintiff is a Colorado-

based company.  Thus, neither Colorado or Utah appears to have a substantially

greater interest in this dispute.  The Court finds that these factors do not weigh in favor

of either party.

### 6. Practical Considerations

No difficulties appear to arise from congested dockets, there is no clear advantage in judicial efficiency or economy to litigating this case in either District, and there are no concerns over enforcing a judgment against defendants.  However, if the Court both declines to apply pendent venue and declines to transfer this case to the District of Utah, plaintiff's non-CFAA claims will be dismissed without prejudice.  Plaintiff would then have to prosecute those claims in Utah, which would result in piecemeal litigation, increasing costs for both sides.  This consideration does not weigh in favor of either party, but is nonetheless relevant under the circumstances.

### 7. Discretionary Considerations

Plaintiff's choice of forum is ordinarily respected; however, there are very few acts occurring in the forum state that give rise to this case.  The Court finds that two factors weigh heavily in favor of transfer.  First, despite plaintiff's attempts to shift the focus of this case to Colorado, the fact remains that all of the acts alleged in plaintiff's complaint occurred in Utah, making Utah the locus of a majority of the evidence in this case.  Second, under the facts before the Court, the Court is reluctant to apply the doctrine of pendent venue.  Venue is proper in this district only as to plaintiff's CFAA claims and only because those claims are premised on defendants accessing and damaging plaintiff's Colorado computer system.  Conversely, plaintiff's eight non-CFAA claims are focused on defendants' actions to form a competing business and to lure away plaintiff's Utah clients, actions which all took place in Utah.  *See Basile*, 717 F. Supp. 2d at 387-88.  Because the acts forming the basis for venue as to plaintiff's

29

CFAA claims are only tangentially related to the acts giving rise to plaintiff's non-CFAA claims, the Court finds that it would be inappropriate to invoke pendent venue to keep this case in this District.  Dismissing plaintiff's non-CFAA claims is not an appropriate option, where doing so would force both parties to bear the costs of piecemeal litigation. *See id.*  Thus, the Court declines to exercise pendent venue over plaintiff's non-CFAA claims and finds that, under the circumstances of this case, defendants have satisfied their burden of establishing that transfer of this case to the District of Utah is appropriate pursuant to 28 U.S.C. § 1404(a).[8]

## IV.  CONCLUSION

For the foregoing reason, it is

**ORDERED** that defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue or, Alternatively, to Transfer Venue [Docket No. 28] is **GRANTED** in part as indicated in this order.  It is further

**ORDERED** that the Clerk of the Court shall transfer this case to the United States District Court for the District of Utah pursuant to 28 U.S.C. § 1404(a).  It is further

**ORDERED** that the preliminary injunction hearing set for Tuesday, July 18, 2015 is hereby **VACATED**.

---

[8]The Court need not therefore address the parties' arguments regarding personal jurisdiction.

30

DATED July 27, 2015.

BY THE COURT:


 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge